UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH LLOYD,<br><br>        Plaintiff,<br><br>    v.<br><br>VIPUL GUPTA, et al.,<br><br>        Defendants. | Case No. 15-cv-04183-MEJ<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT** |

## INTRODUCTION

Plaintiff Elizabeth Lloyd ("Plaintiff") brought this action on behalf of herself and derivatively on behalf of Nominal Defendant[1] 9Global, Inc. ("9Global" or the "Company"). She now asks the Court to grant preliminary approval of the parties' proposed settlement pursuant to Federal Rule of Civil Procedure ("Rule") 23.1. Mot., Dkt. No. 44. In doing so, Plaintiff asks the Court to allow notice of the proposed settlement to be directed to the two non-party 9Global shareholders and to set a date for a final approval hearing. *Id.* The Court held a hearing on this matter on July 21, 2016. Dkt. No. 51. Having considered Plaintiff's Motion, the relevant legal authority, and the record in this case, the Court **GRANTS PRELIMINARY APPROVAL** of the parties' settlement as set forth below.

## BACKGROUND

**A.    Case Background**

Plaintiff has owned shares of 9Global[2] common stock since February 2008. Compl. ¶ 8.

---

[1] "When a derivative suit is brought to litigate the rights of the corporation, the corporation is an indispensable party and must be joined as a nominal defendant." *Grosset v. Wenaas*, 42 Cal. 4th 1100, 1108 (2008) (citations omitted).

[2] 9Global is an online marketing company focused on global lead generation and customer acquisition. Compl. ¶ 1, Dkt. No. 1-1. 9Global's principal place of business is in San Bruno, California. *Id.*

She also worked as an employee of 9Global and served as a member of its Board of Directors from February 2008 until August 12, 2015, when she resigned from both positions. *Id.*

Plaintiff filed this case the same day, asserting both direct and derivative claims against the Chief Executive Officer of 9Global (Defendant Vipul Gupta), certain of his relatives, and another corporate entity owned by Gupta, Defendant 60MonthLoans, Inc. (collectively, the "Gupta Defendants," and together with 9Global, "Defendants"). *See* Compl. Some of the direct claims also named 9Global as a Defendant. *Id.* Altogether, Plaintiff asserts 21 claims, with ten (10) derivative claims on behalf of 9Global (Counts 12 -21) ("Plaintiff's Derivative Claims").[3] *Id.* The Complaint alleges, among other things, that Gupta caused 9Global to fail to pay Plaintiff's agreed-upon wages and to repay loans made by Plaintiff to 9Global; misled Plaintiff about the 9Global's financial position; redirected monies from 9Global to, and for the benefit of, himself, his wife, and his other family members; used 9Global resources to set up a competing business; and committed

---

[3] As indicated, Plaintiff brought 21 causes of action individually (i.e., only on behalf of Plaintiff) or derivatively (i.e., on behalf of 9Global); Counts 1-11 and 21 constitute "Plaintiff's Individual Claims"; Counts 12-21 constitute "Plaintiff's Derivative Claims": (1) Securities Fraud, pursuant to Cal. Corp. Code §§ 25401 and 25501 (individually, against Vipul Gupta); (2) Fraud (individually, against Vipul Gupta); (3) Intentional Misrepresentation (individually, against Vipul Gupta); (4) Failure to Pay Earned Wages, pursuant to Cal. Labor Code §§ 204 and 206 (individually, against 9Global and Vipul Gupta); (5) Breach of Written Contract: Wages (individually, against 9Global and Vipul Gupta); (6) Promissory Estoppel (individually, against 9Global and VipulGupta); (7) Breach of Written Contract: Loan (individually, against 9Global and Vipul Gupta); (8) Breach of Oral Contract: Loan (individually, against 9Global and Vipul Gupta); (9) Account Stated (individually, against 9Global and Vipul Gupta); (10) Fraudulent Transfer, pursuant to Cal. Civ. Code §§ 3439, et seq. (individually, against 9Global and Vipul Gupta); (11) Unfair Competition, pursuant to Cal. Bus. & Prof. Code §§ 17200, et seq. (individually, against 9Global and Vipul Gupta); (12) Unfair Competition, pursuant to Cal. Bus. & Prof. Code §§ 17200, et seq. (derivatively, on behalf of 9Global, against Vipul Gupta and 60ML); (13) Breach of Fiduciary Duty (derivatively, on behalf of 9Global, against Vipul Gupta); (14) Corporate Waste (derivatively, on behalf of 9Global, against Vipul Gupta); (15) Unjust Enrichment (derivatively, on behalf of 9Global, against Vipul Gupta, Nandita Gupta, Ashok Gupta, Bharat Gupta, and 60ML); (16) Conversion/Embezzlement (derivatively, on behalf of 9Global, against Vipul Gupta); (17) Conversion (derivatively, on behalf of 9Global, against Nandita Gupta, Ashok Gupta, Bharat Gupta and Akshay Gupta); (18) Abuse of Control (derivatively, on behalf of 9Global, against Vipul Gupta); (19) Gross Mismanagement (derivatively, on behalf of 9Global, against Vipul Gupta); (20) Accounting (derivatively, on behalf of 9Global, against Nandita Gupta, Ashok Gupta, Bharat Gupta and Akshay Gupta); and (21) Civil Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) (individually and derivatively on behalf of 9Global, against Vipul Gupta, Nandita Gupta, Ashok Gupta, Bharat Gupta, and Akshay Gupta).

securities fraud by purchasing Plaintiff's 9Global stock while misrepresenting the Company's financial position. *See id.* As stated by Plaintiff, "[t]he core of [the] Derivative Claims is the alleged improper use of 9Global assets by Defendant Vipul Gupta for the benefit of himself and his family." Mot. at 4.

On September 14, 2015, Defendants removed this action based on federal question jurisdiction. Not. of Removal, Dkt. No. 1. On December 1, 2015, 9Global filed counterclaims (the "Counterclaims") against Plaintiff. Countercls., Dkt. No. 17. The four Counterclaims against Plaintiff are for: (1) Breach of Fiduciary Duty; (2) Corporate Waste; (3) Conversion and/or Embezzlement; and (4) Accounting. *Id.* The Counterclaims allege, among other things, that Plaintiff redirected monies from 9Global for her own benefit. *Id.* Plaintiff denies liability as to 9Global's Counterclaims. Mot. at 3; *see also* Answer to Countercls., Dkt. No. 20.

On February 2, 2016, Plaintiff filed a motion for partial summary judgment derivatively on behalf of 9Global on Counts 15 (Unjust Enrichment) and 17 (Conversion) against Defendant Nandita Gupta (Dkt. No. 33), but Plaintiff subsequently withdrew that motion without prejudice in light of the parties' agreement to settle this action (Dkt. No. 42).

The parties attended mediation before the Honorable James Larson (Ret.) on April 28, 2016, and while the mediation did not immediately produce a settlement, the parties continued to engage in extensive, arm's-length settlement negotiations. Mot. at 4. On May 25, 2016, the parties agreed to a Memorandum of Understanding setting forth the material terms of an agreement-in-principle to settle Plaintiff's claims, as well as 9Global's Counterclaims. *Id.*

Plaintiff filed this Motion for Preliminary Approval on June 16, 2016 (Dkt. No. 44), and the Gupta Defendants filed a statement of non-opposition on June 28, 2016 (Dkt. No. 47). Counsel for Plaintiff, 9Global, and the Gupta Defendants appeared at the hearing on Plaintiff's Motion. Plaintiff's counsel clarified that 9Global is a closely-held company, with Plaintiff and Vipul Gupta currently holding the vast majority of the Company's shares; the other shareholders evidently account for only approximately six percent of 9Global's other shares.

**B.     The Proposed Settlement**

Plaintiff contends the Settlement provides substantial benefits to 9Global and its

shareholders. Mot. at 2. The terms of the Settlement Agreement are as follows:

In exchange for the settlement of the Derivative Claims (Counts 12- 21),

1.      Vipul Gupta will pay $200,000 to ONE LLP ("9Global's Counsel"), due no later than seven (7) days after final Court approval of this Settlement Agreement. Upon the Effective Date, defined in Section VI of the Settlement Agreement, 9Global's Counsel shall release the $200,000 payment to 9Global. Settlement Agreement ("Settl. Agmt."), Sec. II.1.a.i.1 & II.1.a.ii, Dkt. No. 45-1 (Ex. A to Seyedin-Noor Decl., Dkt. No. 45).

2.      Vipul Gupta further agrees that the loans payable to him by 9Global, which total over $700,000, will be reduced by $200,000. *Id.*, Sec. II.1.a.i.2.

3.      Additionally, "[g]oing forward, 9Global will provide to all shareholders of record, on a quarterly basis, written reports that will summarize the Company's: (1) balance sheets; (2) profits and/or losses; and (3) significant activities for that quarter." *Id.*, Sec. II.1.a.iii.

Plaintiff also has agreed to settle her Individual Claims against Defendants, including 9Global. The Settlement Agreement requires the following compensation to Plaintiff in settlement of her direct claims (Counts 1-11 and 21):

1.      Vipul Gupta will purchase all 1,690 shares of 9Global stock presently owned by Plaintiff for $50,000 in cash. *Id.*, Sec. II.1.b.i.

2.      9Global, Vipul Gupta, and Nandita Gupta will be jointly and severally liable to pay Plaintiff $745,000 in cash, allocated as follows:

  a.      $150,000 in settlement of Plaintiff's claims regarding her un-repaid loans to the Company (Counts 7-8) (*id.*, Sec. II.1.b.ii.1);

  b.      $120,000 in settlement of Plaintiff's claims regarding unpaid wages (Counts 4-5) (*id.*, Sec. II.1.b.ii.2);

  c.      $475,000 to settle the remainder of Plaintiff's Individual Claims and related legal fees and costs (*id.*, Sec. II.1.b.ii.3).

3.      9Global further agrees to indemnify Plaintiff's attorneys' fees and costs up to a cap of $5,000 with respect to her responses to an outstanding document and deposition subpoena to Plaintiff by Avant Credit Corporation ("Avant"), in connection with pending litigation between

4

9Global and Avant. *Id.*, Sec. II.1.b.iii.

In addition, the parties have agreed to release with prejudice all claims arising out of or relating to any of the Individual and Derivative Claims. *Id.*, Sec. III.

Plaintiff now asks the Court issue a Preliminary Approval Order, which:

1. Preliminarily approves the proposed Settlement Agreement;

2. Establishes a procedure for the two non-party 9Global shareholders to follow should they wish to object to the proposed settlement, including setting a date by which any such objections must be made;

3. Directs 9Global to mail the proposed Notice (Dkt. No. 45-2) to the two non-party 9Global shareholders, not later than five (5) days following entry of the Preliminary Approval Order, advising them generally of the terms of the Settlement Agreement and the time and date of the Final Approval Hearing;

4. Schedules a Final Approval Hearing, at which the Court is to consider final approval of the Settlement Agreement. *See* Mot. at 5-6.

**LEGAL STANDARD**

Rule 23.1(c) states "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23.1(c); *see also Ensher v. Ensher, Alexander & Barsoom, Inc.*, 187 Cal. App. 2d 407, 410 (1960)) (noting a shareholder derivative plaintiff is generally considered as a "trustee" for the corporation's cause of action and thus has no power to settle or compromise the corporation's action absent court approval). Settlements of derivative actions are particularly favored because the cases are "notoriously difficult and unpredictable." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (quotation omitted); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("strong judicial policy" favors settlements of complex actions). However, courts must balance this policy in favor of settlement with the effect a derivative settlement has on the corporation and other shareholders. *See In re Zoran Corp. Derivative Litig. (In re Zoran)*, 2008 WL 941897, at *2 (N.D. Cal. Apr. 7, 2008). Unlike a class action where a representative asserts claims on behalf of absent class members, in a derivative action, the representative shareholder asserts claims that belong to the

corporation. *See* Fed. R. Civ. P. 23.1(a); *see also Koerner v. Copenhaver*, 2014 WL 5544051, at *3 (C.D. Ill. Nov. 3, 2014) ("By its own terms, Rule 23.1 only applies to shareholders or members, and it applies when those shareholders or members are making claims that rightfully belong to a corporation or association."). Consequently, courts "must take care that absent shareholders will be treated fairly." *In re Zoran Corp.*, 2008 WL 941897, at *2 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959-60 (9th Cir. 2003) (assess for "actual fraud, overreaching or collusion")).

In assessing whether to approve a derivative action settlement, courts may consider whether the settlement was "fair, reasonable, and adequate." *See In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378; *accord Maher*, 714 F.2d at 455. Courts considering settlements of derivative actions have generally found "[c]ases involving dismissal or compromise under Rule 23(e) of nonderivative cases . . . relevant by analogy." 7C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1839 (3d ed. 2007) (footnote omitted). Thus, "in the context of a derivative action settled on behalf of the class of all shareholders, this requires consideration, in particular, of whether the settlement is the result of arm's-length negotiations in which plaintiffs' counsel has effectively represented the interest of the shareholder class, and whether the substantive terms of the settlement are in the interests of [the company] and its shareholders relative to the likely rewards of litigation." *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 340 (S.D.N.Y. 2011) (internal quotation marks and citations omitted). "In order to grant preliminary approval, the Court need only conclude that the settlement of the claims on the agreed upon terms is 'within the range of possible approval.'" *In re NVIDIA Corp. Derivative Litig. (In re NVIDIA)*, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008) (citation omitted).

Shareholders to the settlement must be given the opportunity to inform the court of their objections, if any. Rule 23.1(c) requires that "[n]otice of a proposed settlement, voluntary dismissal or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c); *see also Ball v. Field*, 1992 WL 57187, at *7 (N.D. Ill. Mar. 19, 1992) ("Notice and court approval are required by Rule 23.1 because the settlement or dismissal of a derivative action will be accorded res judicata effect if another shareholder or limited partner should attempt to bring a similar derivative action on behalf of the same entity, asserting the same

claim."). The notice requirement ensures "dismissal of the derivative suit is in the best interests of the corporation and the absent stockholders." *Papilsky v. Berndt*, 466 F.2d 251, 258 (2d Cir. 1972) (citing *Norman v. McKee*, 431 F.2d 769, 774 (9th Cir. 1970), *cert. denied*, 401 U.S. 912 (1971); additional citation omitted).

## DISCUSSION

### A. Procedural Fairness

"A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from 'arms-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *In re AOL Time Warner S'holder Derivative Litig. (In re AOL)*, 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992) (in the Rule 23 context, preliminary approval is appropriate where the settlement agreement is the product of arms-length negotiation, is facially sufficient, and is within the range of possible recovery).

Plaintiff asserts this Settlement was the result of "extensive arm's-length settlement negotiations" and was "hard-fought." Mot. at 2, 9. According to Plaintiff, "[p]rior to arriving at the proposed Settlement . . . , Plaintiff's counsel conducted a detailed, independent factual investigation and legal analysis in connection with the Action[,]" which "included conducting legal research and analysis supporting the legal merits of Plaintiff's Derivative Claims, analyzing the scope and nature of potential derivative damages that 9Global allegedly incurred, and conducting certain pre-trial discovery." *Id.* at 9. The Settlement Agreement itself acknowledges that "[i]n agreeing to the settlement . . . Plaintiff has considered: (a) the facts developed through her and her counsel's investigation and evaluation of the relevant law; (b) the attendant risks and uncertainty of litigation, as well as the burdens and delay inherent in such litigation; (c) the Gupta Defendants' defenses; (d) the substantial cost to the Company of continuing litigation; and (e) the substantial benefits to 9Global to be provided by Vipul Gupta under the terms of the Settlement." Settl. Agmt. at 4.

Plaintiff's counsel, Bahram Seyedin-Noor, attests that he and his partner, Bryan Ketroser, "have experience litigating dozens of shareholder derivative actions at both the state and federal level, on behalf of shareholder plaintiffs, nominal corporate defendants, and individual defendants." Seyedin-Noor Decl. ¶ 4. He states that "[b]ased on this experience, it is my personal opinion that the proposed Settlement is fair and reasonable to 9Global." *Id.* Plaintiffs' counsel reiterated this position at the hearing, where he indicated that while this case is somewhat unique given how small and closely-held the company is, he believes the Settlement is fair and reasonable to 9Global, a sentiment echoed by counsel for the Gupta Defendants. Plaintiff's counsel further indicated that he formerly worked for a well-known local law firm dealing with derivative action suits and securities litigation for approximately 10 years, and in his experience, this Settlement is in the range of reasonable.

The Court further notes the parties have conducted at least some initial discovery in this matter (Case Management Statement, Dkt. No. 27), and Plaintiff in fact moved for summary judgment on some of the Derivative Claims earlier this year (Summ. J. Mot., Dkt. No. 33). Plaintiff also held a prominent role at 9Global and seemingly had access to significant information about the Company (*see* Case Management Statement at 5), and thus appears to be in a unique position to be able to assess the Settlement Agreement's impact on the Company. There is no evidence of fraud or collusion, and the Settlement appears to be the result of good faith, arms-length bargaining. Finally, while Plaintiff has her own Individual Claims in this action, as well as Counterclaims against her related to her alleged misdeeds through her position with 9Global, the Court perceives no actual conflict of interest at this point between Plaintiff and the interests of the other 9Global shareholders.[4] *See First Am. Bank & Tr. by Levitt v. Frogel*, 726 F. Supp. 1292,

---

[4] The Court addressed this potential conflict at the hearing but ultimately is persuaded at this point that given 9Global's small size and limited number of shareholders—with Plaintiff and Vipul Gupta holding the vast majority of shares—Plaintiff is in adequate position to be able to represent the Derivative Claims in settlement. Furthermore, some conflict seems natural in a situation such as this where the corporation is closely-held. Ultimately, this issue seems better addressed after the other shareholders receive notice and an opportunity to object; thus, the Court will revisit this issue at the final approval stage, if necessary.

1298 (S.D. Fla. 1989) ("'The theoretical distinction between individual and derivative stockholder suits . . . is just that, a theoretical one, not rooted in the realities of most individual and derivative suits, which usually are equally contingent upon the proof of the same nucleus of facts.' . . . [Courts must] look[] beyond the 'surface duality' and determine[] when an 'actual conflict' exists[.]" (quoting *Keyser v. Commonwealth Nat'l Fin. Corp.,* 120 F.R.D. 489, 492 (M.D. Pa. 1988)); *see also Srebnik v. Dean*, 2006 WL 2457386, at *2 (D. Colo. Aug. 22, 2006) (although plaintiffs had individual and derivative claims, finding there was only a "potential" conflict of interest and allowing plaintiffs to represent the derivative action claims).[5]  Thus, at this time, the Court perceives no procedural inadequacies in the negotiating process or litigation to date that precludes preliminary approval of the Settlement.

**B.     Substantive Fairness**

"In the context of shareholder derivative litigation, several of the factors . . . inform the Court's evaluation of whether settlement is fair, reasonable, and adequate: (1) the reasonableness of the benefits achieved by the settlement in light of the potential recovery at trial; (2) the likelihood of success in light of the risks posed by continued litigation; (3) the likely duration and cost of continued litigation; and (4) any shareholder objections to proposed settlement." *In re AOL*, 2006 WL 2572114, at *3 (citing *In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 292 (S.D.N.Y. 1996)).  The court is "primarily concerned with 'the strength of the case for plaintiffs on the merits balanced against the amount offered in settlement.'" *Id.* (quotation omitted).

Plaintiff admits she alleged Vipul Gupta "caused 9Global to improperly pay approximately $1.2 million in wages to his wife and family (*see* [Compl.] ¶¶ 36-44), and charged other improper expenses to the Company[,]" but contends the monetary compensation provided to 9Global and its shareholders "is well within the range" of compensation "that other courts have found sufficient

---

[5] *But see Grosset v. Wenaas*, 42 Cal. 4th 1100, 1114 (2008) (noting that as a general matter, "[t]he fundamental purpose of a derivative action is to provide a means by which a stockholder may seek to enforce the rights of a corporation when the corporate board refuses to do so. . . . [Thus, i]f successful, a derivative claim will accrue to the direct benefit of the corporation and not to the stockholder who litigated it." (citations omitted)).

9

for preliminary approval" and further provides "valuable corporate governance requirements on 9Global" and its management. Mot. at 7 (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of one-sixth of the potential recovery to be fair under the circumstances); *Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (24 percent of potential recovery); *Lewis v. Anderson*, 692 F.2d 1267, 1271 (9th Cir. 1982) (corporate governance reforms can be "sufficiently beneficial to a corporation"); *In re NVIDIA*, 2008 WL 5382544, at *3 (corporate governance reforms provide valuable benefits to companies)). Plaintiff further lists a variety of discovery, pretrial, and trial-related actions that would still need to be completed if this case is not settled and contends further litigation of the Derivative Claims will be "time-consuming, costly, and protracted with an uncertain net benefit to 9Global." *Id.* at 10. She asserts the parties' Settlement "eliminates these and other risks of continued litigation, including the very real risk of no recovery after several more years of litigation[,]" noting that "[i]n derivative actions, those risks are especially high." *Id.* at 10-11 (collecting cases).

Ultimately, the Court finds at this point the Settlement is substantively fair and reasonable. It provides significant compensation to 9Global through a cash payment from Vipul Gupta and a waiver of debt. It also enacts meaningful changes to the Company's governance requirements. In doing so, the Settlement also protects 9Global from further uncertain litigation and likewise reduces the associated fees and costs. The case is at a relatively early stage, but the parties have already begun motion practice—which is consistent with derivative action and complex cases in general, but also indicative of future likely litigation practices in this case. Finally, given that the Company is closely-held, primarily between Plaintiff and Vipul Gupta, the Settlement will largely affect them and ultimately Vipul Gupta more than any other shareholders. Consequently, the Court is satisfied at this point that the substance of the Settlement Agreement is fair and reasonable such that preliminary approval may be granted.

**C.     Adequacy of Notice**

Under Rule 23.1(c) "[n]otice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). In general, notice must be "reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982) ("The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." (citation omitted)).

Under the parties' Agreement, 9Global will notify the two non-party 9Global shareholders by mailing those two individuals a copy of the proposed Notice via first-class mail. *See* Proposed Notice, Dkt. No. 45-2 (Ex. B to Seyedin-Noor Decl.). The Court has reviewed this proposed Notice and finds the form and method of notice will fairly and reasonably apprise the two nonparty 9Global shareholders of the essential terms of the proposed Settlement.

## CONCLUSION

Based on the analysis above, the Court **GRANTS PRELIMINARY APPROVAL** of the parties' Settlement Agreement. Accordingly, the Court hereby **ORDERS** as follows:

1. The Court preliminarily approves the Settlement, and incorporates and adopts the Settlement Agreement (Dkt. No. 45-1) for purposes of this Order, subject to further consideration at the Settlement Hearing described below.

2. A hearing (the "Settlement Hearing"—also referred to as the "Final Approval Hearing," above) shall be held on **September 8, 2016 at 10:00 a.m.** in the United States District Courthouse, 450 Golden Gate Avenue, Courtroom B, 15th Floor, San Francisco, CA 94102 to (a) determine whether the proposed Settlement, on the terms and conditions provided for in the Settlement Agreement, is fair, reasonable and adequate and in the best interests of 9Global and its shareholders; (b) determine whether the Court should finally approve the Settlement as provided in the Settlement Agreement; and (c) rule on such other matters the Court deems appropriate.

3. All papers in support of approval of the Settlement shall be filed with the Court and served on all respective parties at least twenty-one (21) days prior to the Settlement Hearing, that is, by **August 18, 2016**.

4. The Settlement Hearing may be adjourned by the Court from time to time without further notice to anyone other than the parties to the Action. The Court may also change any other

1   dates set forth herein without further notice to anyone other than the parties to the Action.

2         5.      The Court reserves the right to approve the Settlement at or after the Settlement Hearing with such modifications to the Settlement Agreement as the parties may consent to and without further notice.

      6.      The Court approves, in form and content, the Notice of Pendency and Settlement of Shareholder Derivative Actions ("Notice") filed by the parties as Exhibit B to the Settlement Agreement (Dkt. No. 45-2), and finds this Notice meets the requirements of Federal Rule of Civil Procedure 23.1 and due process.

      7.      Within five (5) business days after entry of this Order, 9Global shall cause a copy of the Notice, substantially in the form of Exhibit B to the Settlement Agreement, to be mailed by first-class mail to non-party stockholders of record at the address(es) provided on the books of the Company.

      8.      No later than twenty-one (21) days prior to the date of the Settlement Hearing, i.e., by **August 18, 2016**, 9Global shall file with the Court appropriate proof of mailing the Notice and other Notice procedures in accordance with this Preliminary Order.

      9.      As set forth in the Notice, any current shareholder of 9Global who objects to any aspect of the Settlement or the Judgment proposed to be entered, or who otherwise wishes to be heard by the Court ("Objector"), has the right to submit his or her objection to the Court, and may, but is not required to, appear in person or through counsel at the Settlement Hearing to present any evidence or argument that may be proper and relevant; provided, however, that no Objector shall be heard or entitled to contest the approval of the terms and conditions of the Settlement, or, if approved, the Judgment to be entered thereon, unless he, she, or it has, no later than fourteen (14) days before the Settlement Hearing, i.e., by **August 25, 2016** (unless the Court in its discretion shall thereafter otherwise direct, upon application of such person and for good cause shown), filed with the Clerk of the Court, U.S. District Courthouse, 450 Golden Gate Avenue, 16th Floor, San Francisco, CA 94102, and served (by hand, first class mail, or express service) on Plaintiff's Counsel, 9Global's Counsel, and the Gupta Defendants' counsel, at the addresses below, the following:

12

1    (i) a written notice of objection that includes the Objector's name, address and telephone number, along with a representation as to whether the Objector intends to appear at the Settlement Hearing;

(ii) competent evidence that the Objector currently owns shares of 9Globalstock,

(iii) a statement of the objections to any matters before the Court, the grounds therefore or the reasons for the Objector's desiring to appear and be heard, as well as all documents or writings the Objector desires the Court to consider; and

(iv) if the Objector has indicated that he, she, or it intends to appear at the Settlement Hearing, the identities of any witnesses the Objector plans on calling at the Settlement Hearing, along with a summary of their likely testimony.

> Bahram Seyedin-Noor, Esq.
> ALTO LITIGATION, PC
> 4 Embarcadero Center,
> San Francisco, CA 94111
> *Counsel for Plaintiff and Counter-Defendant Elizabeth Lloyd*
>
> Christopher W. Arledge, Esq.
> ONE LLP
> 4000 MacArthur Boulevard Suite 1400
> East Tower, Suite 500
> Newport Beach, CA 92660
> *Counsel for Nominal Defendant, Defendant, and Counter-Claimant, 9Global, Inc.*
>
> Robert G. Loewy
> LAW OFFICE OF ROBERT G. LOEWY, P.C.
> 101 Enterprise, Suite 350
> Aliso Viejo, CA 92656
> *Counsel for Defendants Vipul Gupta, Nandita Gupta, Ashok Gupta, Bharat Gupta, Akshay Gupta, and 60Monthloans, Inc.*

10.    Any person or entity of any nature who fails to object in the manner prescribed above shall be deemed to have waived such objection (including the right to appeal), unless the Court in its discretion allows such objection to be heard at the Settlement Hearing, and forever shall be barred from raising such objection in this Action, or any other action or proceeding, or otherwise contesting the Settlement or the award of attorneys' fees and expenses, but shall otherwise be bound by the Judgment to be entered and the releases to be given.

11.    In the event the Settlement is terminated pursuant to the terms of the Settlement

13

Agreement, the Settlement and any actions taken in connection therewith shall become null and void for all purposes, and all negotiations, transactions, and proceedings connected with it: (i) shall be without prejudice to the rights of any party thereto; (ii) shall not be deemed to be or construed as evidence of, or an admission by any party of any fact, matter or thing; and (iii) shall not be admissible in evidence or be used for any purpose in any subsequent proceedings in the Action or any other action or proceeding. If the Settlement is terminated, the parties shall be deemed to have reverted to their respective status in the Action as of May 25, 2016, and, except as otherwise expressly provided, the parties shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered.

12. All discovery and other proceedings in this Action (except as may be necessary to carry out the terms and conditions of the proposed Settlement) are hereby stayed and suspended until further order of the Court. Except as provided in the Settlement Agreement, pending the final determination of whether the Settlement should be approved, all parties to the Action (including Plaintiff, the Gupta Defendants, and 9Global) are hereby enjoined against instituting, commencing, prosecuting, continuing or in any way participating in, whether directly, representatively, individually, derivatively on behalf of 9Global, or in any other capacity, any action or other proceeding asserting any Released Claims.

**IT IS SO ORDERED.**

Dated: July 22, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge